IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sherice Green, on behalf of T.L., ) | C/A No. 2:18-cv-1187-DCC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Nancy Berryhill, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff has brought this action on behalf of her son pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to a United States Magistrate Judge for pre-trial handling. On May 31, 2019, Magistrate Judge Mary Gordon Baker issued a Report and Recommendation ("Report"), recommending that the decision of the Commissioner be affirmed. ECF No. 16. On June 14, 2019, Plaintiff filed Objections to the Report, and the Commissioner filed a Reply on June 24, 2019 ECF Nos. 17, 19. For the reasons stated below, the Court adopts the Report and incorporates it herein by reference.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1).

1

The role of the federal judiciary in the administrative scheme established by the Social Security Act ("the Act") is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebreeze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard. *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

## BACKGROUND

Plaintiff applied for SSI on her son, T.L.'s, behalf on October 7, 2014, alleging disability since August 26, 2011, due to attention deficit hyperactivity disorder ("ADHD"). Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 20, 2017. The ALJ denied Plaintiff's claim in a decision issued on July 31, 2017. The Appeals

Council denied Plaintiff's request for a review, making the determination of the ALJ the final decision of the Commissioner.

## **DISCUSSION**

The Magistrate Judge recommends that the Court affirm the Commissioner's decision because it is supported by substantial evidence and the proper legal standards were applied. Plaintiff objects to the Report, claiming "[t]he evidence overwhelmingly supports that T.L. has a marked limitation in Interacting and Relating to Others." ECF No. 17 at 1. Thus, Plaintiff contends that the Magistrate Judge erred in recommending affirming the ALJ's opinion.

To determine if a child meets the functional equivalent of a Listing, the ALJ must consider the child's ability in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a. A child's impairments or combination of impairments functionally equal the Listings when the impairments result either in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). The ALJ will find that a child has a "marked" limitation in a domain when the child's impairment or combination or impairments interferes seriously with his ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme" and may arise when several activities or functions are limited or when only one is limited. *Id.* The ALJ will find that a child has an "extreme" limitation in a domain when the child's impairment or combination of impairments interferes very seriously with his ability to

independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3)(i). "Extreme" limitations are those that are "more than marked" and may arise when several activities or functions are limited or when one is limited. *Id.* Here, the ALJ found that T.L. had a "marked limitation" in acquiring and using information, "less than marked limitation[s]" in attending and completing tasks and interacting and relating with others, and no limitations in the remaining domains. ECF No. 9-2 at 25–34.

In her objections, Plaintiff exclusively argues that T.L. has a "marked limitation" in Interacting and Relating to Others. The relevant regulation defines this domain as follows:

(1) General.

(i) Interacting means initiating and responding to exchanges with other people, for practical or social purposes. You interact with others by using facial expressions, gestures, actions, or words. You may interact with another person only once, as when asking a stranger for directions, or many times, as when describing your day at school to your parents. You may interact with people one-at-a-time, as when you are listening to another student in the hallway at school, or in groups, as when you are playing with others.

(ii) Relating to other people means forming intimate relationships with family members and with friends who are your age, and sustaining them over time. You may relate to individuals, such as your siblings, parents or best friend, or to groups, such as other children in childcare, your friends in school, teammates in sports activities, or people in your neighborhood.

(iii) Interacting and relating require you to respond appropriately to a variety of emotional and behavioral cues. You must be able to speak intelligibly and fluently so that others can understand you; participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully.

(iv) Your activities at home or school or in your community may involve playing, learning, and working cooperatively with other children, one-at-a-time or in groups; joining voluntarily in activities with the other children in your school or community; and responding to persons in authority (e.g., your parent, teacher, bus driver, coach, or employer).

*Id.* § 416.926a(i). The regulations further provide "[a]ge group descriptors," which outline the type of behavior typical of certain age groups and further give "[e]xamples of limited functioning in interacting and relating with others." *Id.* §§ 416.926a(i)(2), (3).

In concluding that T.L. has less than a "marked limitation" in Interacting and Relating to Others, the ALJ outlined the objective medical evidence, which indicates that T.L.'s ADHD medication was generally working well, though Plaintiff had concerns about T.L's anger issues. ECF No. 9-2 at 30–31. However, the medical records also contain evidence to the contrary. *See, e.g.,* ECF No. 9-10 at 25 (referencing an April 23, 2015 visit where it was noted T.L. was "having anger issues" and "wants to fight adults when he gets mad"); *id.* at 28 (referencing a December 28, 2015 visit where it was noted T.L. was having "behaivor (sic) issues" and "has been fighting, cussing and kicked off the bus"). One of the treatment notes reports that Plaintiff indicated that T.L. only engages in violent behavior "when the medicine hasn't kicked in." *Id.* at 31 (referencing a May 13, 2016 visit where it was noted T.L. was "suspended from school because of hitting"). Curiously, as T.L. progressed in age, his treatment notes state that Plaintiff "doesn't feel like he has been doing well even on [Vyvanse] . . . [but Plaintiff] doesn't want to change anything at this time . . . ." *Id.* at 41. Therefore, there is conflicting evidence in this case, as T.L. continued to have behavioral problems and violent outbursts but his mother did not want to alter his medication. *Id.* at 25, 28, 31, 36. 41 (noting behavioral problems but also noting that Plaintiff did not want to make any changes to T.L.'s medication).

The record also contains numerous statements and evaluations from teachers. For example, Angela Hamilton, a special education teacher, stated that T.L. "is at the principal's office on average at least once a day" and further noted that "[s]ometime[s] we

5

do need to remove other children from the classroom because he is a danger to the other children" and "throws things" and "spits and turns things over." ECF No. 9-8 at 46. Ms. Hamilton further stated that T.L. "demonstrates difficulties with interacting with his peers" and "does not interact appropriately with adults or persons in authority." *Id.* at 48. In fact, Ms. Hamilton reiterated that T.L. "hit[s], spit[s], kick[s], use[s] profanity and becomes very irrate (sic)." *Id.* The ALJ addresses Ms. Hamilton's questionnaire, but glosses over these significant problems by characterizing them as "some noted behavior difficulties." ECF No. 9-2 at 31. While the ALJ is correct that state agency medical consultants reviewed some school records in finding that T.L. had "less than marked" limitations in Interacting and Relating to Others, those opinions predated many of the medical records in this case as well as the teacher evaluations.

After reviewing the medical evidence, applicable law, Report, and ALJ decision, the Court concludes that the ALJ did not adequately address the relevant evidence and address significant inconsistencies with the conclusion that T.L. had "less than marked" limitations in Interactions and Relating to Others. Accordingly, the Court cannot determine whether the ALJ's decision is supported by substantial evidence and a remand is warranted in this case.

## **CONCLUSION**

For the reasons set forth above, the Court **DECLINES** to adopt the Report, reverses the decision of the Commissioner, and remands pursuant to sentence four of 42 U.S.C. § 405(g) for further evaluation of Plaintiff's claim as indicated above.

IT IS SO ORDERED.

                                                   s/ Donald C. Coggins, Jr.
                                                  United States District Judge

September 25, 2019
Spartanburg, South Carolina